## In re ALLIED–SIGNAL INC., et al., Petitioners.

### No. 89–1944.

United States Court of Appeals, First Circuit.

Heard Oct. 6, 1989.

Decided Dec. 20, 1989.

Geoffrey C. Hazard, Jr., New Haven, Conn., with whom Stephen H. Sachs, Baltimore, Md., Andrew B. Weissman, Alan N. Braverman, Joseph E. Killory, Jr., Washington, D.C., Teresa D. Baer and Wilmer, Cutler & Pickering, were on brief for petitioners.

Arthur R. Miller, Cambridge, Mass., with whom Sherrill Hondorf, Waite, Schneider, Bayless & Chesley, Peter Berkowitz, Alvaro Calderon, Hato Rey, P.R., Stanley M. Chesley, Cincinnati, Ohio, John Cummings, III, New Orleans, La., Wendell H. Gauthier, Metairie, La., David C. Indiano, Will Kemp, Las Vegas, Nev., Harvey B. Nachman, Santurce, P.R., Jorge Ortiz Brunet,

Hato Rey, P.R., Jorge M. Suro–Ballester and Francisco M. Troncoso, were on brief for respondents, The Plaintiffs' Steering Committee.

Before CAMPBELL, Chief Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

Forty-five (of 78) defendants in the Phase Two trial of the San Juan Dupont Plaza Hotel fire litigation (which we have described in *In re Allied Signal,* 891 F.2d 967, 968–969, (1st Cir.1989) (*"Allied Signal I"*) including 35 of the 49 defendants who brought the petition in No. 89–1823 and 10 others, have brought a second petition for mandamus asking us to order Judge Acosta to disqualify himself and to declare a mistrial in Phase Two. They claim that two sets of financial relationships create an "appearance of partiality under 28 U.S.C. sec 455(a)." The first set involves Judge Acosta and Roberto J. Matos, local counsel for three of the petitioners' fellow Phase Two defendants; the second set involves Judge Acosta and Harvey L. Nachman, a counsel for plaintiffs. We shall assume the reader is familiar with the background of this litigation and the standards that we have set forth in *Allied Signal I.* We shall discuss each set of relationships in turn. For reasons set forth below, we deny the petition.

## I.

### The Matos Relationship

Judge Acosta, his wife, and Roberto Matos together own a corporation that owns a piece of commercial real estate, which provides Judge Acosta and his wife with investment income of about $50,000 per year. In addition, the corporation pays Mrs. Acosta a management salary and provides her with the use of a car. Mr. Matos is local counsel for three of the hotel's suppliers who are defendants in Phase Two. The petitioners have submitted an affidavit which says that Mr. Matos told "Judge Acosta prior to entering his (Matos') ap-

* Of the Second Circuit, sitting by designation.

pearance in this case that he would *not* decline to undertake this case because of his investment with Judge Acosta," and that Judge Acosta's potential disqualification "would *not* influence ... his decision." (Emphasis added.)

We shall assume, for the sake of argument, that this financial relationship creates an appearance of partiality. *But cf. In re Beard,* 811 F.2d 818, 831 (4th Cir. 1987) (judge's passive investment, with local counsel for some claimants in the Dalkon Shield litigation, in an office building unrelated to the litigation, created no reasonable doubt about judge's impartiality). Even so, circumstances have recently changed so that, irrespective of the merits of the "partiality" argument, the petitioners are not legally entitled to the relief that they seek.

The reason that disqualification is not now required is that the plaintiffs have now settled their differences with Mr. Matos' clients; he will no longer appear in Phase Two; and, as far as we can tell, he will not again appear in this litigation. There is no claim that Judge Acosta is, or was, actually partial, nor do we have any reason to believe that the financial relationship with Mr. Matos would lead Judge Acosta to be other than impartial in the future. As to the future, the settlement cures the problem of appearances. *Cf. In re Webster,* 382 F.2d 79, 83 n. 3 (9th Cir. 1967) (describing Ninth Circuit's dismissal of mandamus petition for judicial disqualification as moot when the relevant part of the case had been settled and a judgment of dismissal entered).

As to the past, our reasons for refusing to order a mistrial are similar to those set forth in *Allied Signal I,* 891 F.2d at 972, 973. As we there pointed out, where no actual bias is at issue, where the question is solely one of appearances, judicial actions already taken are not necessarily rendered invalid because of a circumstance that violates § 455(a). As we read the Supreme Court's *Liljeberg* opinion, we

are to fashion retrospective relief with an eye towards a just result. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 2204, 2206, 100 L.Ed.2d 855 (1988). And, we believe it would be unfair to interrupt the present trial. As we noted in *Allied Signal I*, 891 F.2d at 973, the parties have invested an enormous amount of time and expense in the Phase Two proceedings, as indicated, for example, by the 2,210 docket entries relating to that phase entered by September 14, 1989. Moreover, the declaration of a mistrial could threaten to undo settlements that have been made or that are in the offing. At the same time, the comparatively small role that Matos played in the litigation, as well as the fact that he represented parties on the same side as the petitioners, suggests that our refusal to order a mistrial would not create a serious crisis of confidence in the impartiality of the judiciary. Thus, we see no basis for issuing a writ of mandamus.

## II.

### *The Nachman Relationship*

Petitioners state that Mr. Nachman, a counsel for plaintiffs and a member of the Plaintiffs' Steering Committee, loaned $50,000 to Judge Acosta (or to his real estate venture) before Judge Acosta was appointed to the bench, that he "may well have loaned Judge Acosta money on a number of other occasions," and that he "also served as counsel for Judge Acosta's venture with Mr. Matos, attaining a favorable settlement of a lawsuit ... for 'a nominal fee.'" Petitioners argue that this relationship "[w]hen viewed in tandem ... with the business venture with Mr. Matos" helps their claim of partiality. They also say that "the district court's relationship with Mr. Nachman, standing alone, raises a serious question of the appearance of partiality."

Petitioners, however, very much to our surprise, fail to mention in their otherwise careful brief that Mr. Nachman loaned the $50,000 to Judge Acosta in 1978 and that the loan was repaid in 1979, before Judge Acosta was appointed United States Attor-

ney or District Judge. In addition, Mr. Nachman represented Judge Acosta's venture *before* and not *after* Judge Acosta became United States attorney. Mr. Nachman states in his uncontroverted affidavit that "any loan, if ever made, was made before Mr. Acosta was U.S. Attorney and was promptly repaid." He adds that since Judge Acosta "became United States Attorney more than eight (8) years ago, we severed all social relationships."

We do not see how a series of social or business relationships of the sort of which petitioners complain, between a judge and lawyer, taking place more than eight years ago, before the judge's appointment, could cast significant doubt on the judge's impartiality. We do not see how these relationships could make any significant difference to our disposition of petitioners' "Matos relationship" claims. And, insofar as petitioners argue that the Nachman matters, in themselves, show unlawful partiality, their claim is frivolous.

For these reasons the petition for mandamus is

*Denied.*