EMILIO M. GARZA, Circuit Judge,
dissenting:
Because the majority fails to apply the most recent Supreme Court guidance on 28 U.S.C. § 455(a)[1] and neither applies nor distinguishes the plethora of existing Fifth Circuit caselaw on § 455(a), I respectfully dissent.
The most recent Supreme Court case on § 455(a), Liteky v. United States, — U.S. —, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), modifies § 455(a)’s objective standard, first announced in Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). Although the factual circumstances of Liteky primarily concerned the “extrajudicial source” doctrine, Justice Scalia also analyzed § 455(a) in broader terms. Specifically, Liteky describes the objective standard of § 455(a)[2] as an “impossibility of fair judgment” test, id. at —, 114 S.Ct. at 1157; see also id. at —, 114 S.Ct. at 1161 (Kennedy, J., concurring) (discussing “[t]he Court’s ‘impossibility of fair judgment’ test”), and requires “a deep-seated favoritism or antagonism that would make fair judgment impossible,” id[3] I fail to find any indication in Liteky that limits *161 this description to the appearance of bias created by judicial comments during the trial. Accordingly, I read Liteky to prescribe a standard narrower than the “person on the street” standard the majority appears to use.
Second, other than Vieux Carre Property Owners v. Brown, 948 F.2d 1436 (5th Cir.1991), and Henderson v. Department of Public Safety & Corrections, 901 F.2d 1288 (5th Cir.1990), see op. at 157 n. 6, the majority does not discuss the many Fifth Circuit and other cases applying § 455(a). This line of cases sets up a continuum between opposite poles — one requiring recusal; the other, not. The majority makes no attempt to place Jordan on this continuum, and it does not distinguish or support the Jordan decision in accordance with this caselaw.
“[I]t is critically important in a case of this kind to identify the facts that might reasonably cause an objective observer to question [a judge’s] impartiality.” Liljeberg, 486 U.S. at 865, 108 S.Ct. at 2205. Special emphasis should be placed on identifying those facts material to our § 455(a) analysis. See, e.g., id. at 865-67, 108 S.Ct. at 2205-06. In my view, this case requires us to determine whether a longstanding friendship, coupled with supposed “bad blood” between a judge’s friend and the defendant, is enough to support a holding of abuse of discretion in relation to “appearance of partiality.”
“‘Partiality’ does not refer to all favoritism, but only to such as is, for some reason, wrongful or inappropriate.” Liteky, — U.S. at —, 114 S.Ct. at 1156. “[B]ad appear-anees alone should not require disqualification to prevent an unfair trial.” Del Vecchio v. Illinois Dep’t of Corrections, 31 F.3d 1363, 1371 (7th Cir.1994). “Not every ‘possible temptation’ to be biased presents a sufficient probability of bias to require disqualification.” Id. at 1372. Because recusal is warranted “when a judge has a direct personal or fiduciary interest,” United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir.1992), courts have required recusal where the judge’s relative was involved in the case,[4] where the judge’s law clerk accepted employment with a party’s counsel,[5] where counsel for one party had represented the judge,[6] where a partner of one party’s counsel was the judge’s former law clerk,[7] or where the judge had a fiduciary responsibility to a party in interest.[8] In contrast, courts do not insist on recusal where the judge’s interest is “remote, contingent, indirect or speculative,” Lovaglia, 954 F.2d at 815, such as where the judge had made only minor contributions to a party’s campaign,[9] where the judge delayed a hearing until a close friend would no longer be interested in the outcome,[10] where the judge’s spouse was a student at the defendant university,[11] where the judge had a sporadic friendship with counsel,[12] where the friendship between the judge and the victim had ended several years before the case,[13] where the judge’s son represented a non-party entity in which a party had an interest,[14] where the judge’s spouse was involved in a separate transaction with a party,[15] or where the judge’s spouse was a partner in *162 the law firm that had represented a party on other matters.[16] In my view, the facts of this case fit most closely with the latter group of cases, especially those concerning involvement of the judge’s spouse, in which the judge did not abuse his discretion.[17] Indeed, in these cases, no recusal was required even though the judge’s spouse was connected with a party to the case.[18] Here, the source of the challenged connection — Michael Wood — is not a party. Friendship plus the speculation of retaliation is not enough.[19] Whether we apply Liteky’s “impossibility of fair judgment” test or Fifth Circuit precedent, I would affirm Judge Harmon’s decision.
The majority states that “each § 455(a) case is extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances, more than by comparison to situations considered in prior jurisprudence.” See op. at 157. Having said that, the majority feels free to ignore prior § 455(a) caselaw. However, as an appellate court, we have an obligation to provide district court judges with some semblance of legal principles against which they may measure their conduct. My “parsing of our prior cases,” op. at 158 n. 10, is simply that — an attempt to identify a principled basis for decision underlying the resolution of each case. The majority’s opinion, to quote a dissenter in Liljeberg, is “long on ethics in the abstract, but short on workable rules of law.” Liljeberg, 486 U.S. at 870, 108 S.Ct. at 2208 (Rehnquist, C.J., dissenting).[20]
The majority fails to anchor this case firmly in the existing § 455(a) jurisprudence. Imprecision and generalization without precise legal standards articulated and applied will reduce a supposedly objective standard to the subjective whim of the appellate panel. Although I sympathize with the majority’s concerns, the facts of this case satisfy the objective test of Liteky and Fifth Circuit law: Judge Harmon did not abuse her discretion in denying the motion to recuse herself. Therefore, I respectfully dissent.[21]

.Section 455(a) states that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.”

. The resolution of a § 455(a) question is an objective inquiry. See Liteky, — U.S. at — —, 114 S.Ct. at 1153-54 (requiring all § 455(a) questions "to be evaluated on an objective basis, so that what really matters is not the reality of. bias or prejudice but its appearance”); Liljeberg, 486 U.S. at 860-61, 108 S.Ct. at 2203 (imposing objective standard); Potashnick v. Port City Constr. Co., 609 F.2d 1101, 1111 (5th Cir.) (holding that the "goal of the judicial disqualification statute is to foster the appearance of impartiality”), cert. denied, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980); id. (noting that § 455(a) deals with appearance of impartiality, not actual bias or prejudice); see also In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1313 (2d Cir.1988) (“[T]he test to be applied is an objective one which assumes that a reasonable person knows and understands all the relevant facts." (emphasis in original)), cert. denied, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989); In re Mason, 916 F.2d 384, 385 (7th Cir.1990) ("Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits.”).

. Liljeberg, on the other hand, describes the standard as whether a reasonable, objective observer, knowing all the facts, would question the judge's impartiality. 486 U.S. at 860-61, 108 S.Ct. at 2203. Liteky's "impossibility of fair judgment” standard therefore clarifies the threshold of "reasonableness” in this context.

. In re Faulkner, 856 F.2d 716, 721 (5th Cir.1988).

. Hall v. Small Business Admin., 695 F.2d 175, 179 (5th Cir.1983).

. Potashnick, 609 F.2d at 1111.

. Parker v. Connors Steel Co., 855 F.2d 1510, 1524-25 (11th Cir.1988), cert. denied, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989).

. Liljeberg, 486 U.S. at 866-70, 108 S.Ct. at 2206-07.

. Mason, 916 F.2d at 387.

. Vieux Carre Property Owners, 948 F.2d at 1448.

. Levitt v. University of Texas at El Paso, 847 F.2d 221, 225-26 (5th Cir.), cert. denied, 488 U.S. 984, 109 S.Ct. 536, 102 L.Ed.2d 567 (1988).

. Henderson, 901 F.2d at 1295-96.

. Lovaglia, 954 F.2d at 816.

. United States v. Miranne, 688 F.2d 980, 985 (5th Cir.1982), cert. denied, 459 U.S. 1109, 103 S.Ct. 736, 74 L.Ed.2d 959 (1983).

. In re Drexel Burnham Lambert Inc., 861 F.2d at 1314-15.

. In re Billedeaux, 972 F.2d 104, 105-06 (5th Cir.1992).

. See In re Billedeaux, 972 F.2d at 105-06; In re Drexel Burnham Lambert Inc., 861 F.2d at 1314-15; Levitt, 847 F.2d at 225-26; see also supra notes 11, 15, 16 and accompanying text.

. The majority suggests that Judge Harmon's connection to Wood is more important than that of her spouse. Op. at 158 n. 9. I question this conclusion because Mr. Harmon's connection to Mr. Wood was much closer and more involved than that of the judge. Because a mere friendship between Judge Harmon and Wood would not have required recusal in this case, only the past interactions of Wood and the defendant could have brought the friendship into question. However, as counsel stated at oral argument, Judge Harmon's knowledge, if any, of the past altercation derived from her spouse’s informing her of it. Accordingly, I maintain that the connection of Judge Harmon's spouse is a critical focus of this case.

. For example, a party or counsel may have offended the judge in a prior case, or even the same case. The judge may disagree with the party or counsel's political or moral views. See, e.g., Liteky, —U.S. at —, 114 S.Ct. at 1150-51. A party or counsel may have fought bitterly with the judge's former law partner. Indeed, a party may have murdered the judge’s colleague. See United States v. Harrelson, 754 F.2d 1153 (5th Cir.), cert. denied, 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241 (1985). The specter of retaliation by the judge is present in each of these examples, yet we require recusal in none of them. The possibility in this case is equally remote — without a higher probability, it is insufficient.

. The majority also excuses itself from addressing prior caselaw because it is “uncomfortable in blindly relying upon civil cases in determining whether a judge presiding over a felony trial should recuse.” The clear language of § 455(a), however, makes no distinction between civE and criminal cases. I believe civE litigants are equally as entitled to an impartial judge as are those involved in a criminal case.

. I have not addressed the remaining issue — the remedy for a § 455(a) violation. Even if I agreed that Judge Harmon abused her discretion, I see no reason why another judge of the Southern District of Texas could not conduct the resentencing. The majority's Couch remedy implies that disqualification of a single judge automatically disqualifies every other judge of that district. The majority protests that "this is not *163 the impression [they] want to leave the reader.” Op. at 160 n. 18. However, by stating that "having one of her own colleagues in her district pass on her past actions well might, in and of itself, exacerbate the appearance of impropriety," id., I cannot see how they avoid that impression. Moreover, our system often requires judges to rule on matters involving a colleague— if a judge may preside over the trial of the murder of a colleague without disqualification, see United States v. Harrelson, 754 F.2d 1153, 1164-66 (5th Cir.), cert. denied, 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241 (1985), I see no reason to disqualify the entire Southern District of Texas in this case. For these reasons, I find the majority’s remedy extreme.