**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

ERNESTO FRANCISCO COLE, a/k/a La
Pe, a/k/a Panama, a/k/a Negro, a/k/a
Negrito,

        *Defendant-Appellant.*

No. 01-4574

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CR-00-455)

Argued: April 5, 2002

Decided: June 6, 2002

Before WILKINSON, Chief Judge, and MICHAEL and
TRAXLER, Circuit Judges.

---

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Michael and Judge Traxler joined.

---

**COUNSEL**

**ARGUED:** Thomas Franklin Almon, Jr., THOMAS F. ALMON
ATTORNEY, Miami, Florida, for Appellant. William Neil Hammer-
strom, Jr., Assistant United States Attorney, Alexandria, Virginia, for
Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney,

Gene Rossi, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

---

**OPINION**

WILKINSON, Chief Judge:

Ernesto Francisco Cole appeals the judgment of the district court sentencing him to concurrent terms of life imprisonment for operating a continuing criminal enterprise and committing murder while engaged in drug trafficking. *See* 21 U.S.C. § 848. Cole argues that this prosecution was barred by his prior prosecution in Florida, that the government's belated disclosure of *Brady* material deprived him of his right to confrontation and to a fair trial, and that the trial judge erred in failing to recuse himself after disclosing his relationship to a government witness. Because each of these claims lacks merit, we affirm.

I.

On December 20, 2000, Ernesto Cole was indicted in the Eastern District of Virginia for conspiring to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One), operating a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848 (Count Two), and committing murder while engaged in drug trafficking in violation of 21 U.S.C. § 848(e)(1)(A) (Count Three). The government alleged and showed at trial that Cole operated an extensive drug organization over a ten-year period — from "in or about 1990" to "on or about August 8, 2000." Cole's operation included the importation of hundreds of kilograms of cocaine by over fifteen other conspirators from Panama, through the Port of Miami, into the United States. Further, hundreds of kilograms of cocaine were distributed in south Florida and hundreds of kilograms were delivered to eastern Virginia, after which they were sold to others in and around Washington, D.C. Moreover, Cole was involved in acts of money laundering, violence, and murder to further his drug enterprise.[1]

---

[1]Cole was initially charged in a one-count CCE indictment on August 2, 2000, which covered the time period from "in or about 1990" to "on

Both before and during trial, Cole moved to dismiss all three counts of the indictment on the ground that they were barred by his prior drug conspiracy prosecution in the Southern District of Florida. In December 1999, Cole had been indicted in Florida for conspiracy to distribute cocaine from July 1998 to November 1999, as well as for two counts of possession with intent to distribute cocaine — on July 14, 1998 and October 28, 1999 in Miami. These charges were based on cocaine seizures in connection with the arrests of Robert Cruz in Maryland and Frank Wall in Virginia. Cole pleaded guilty to one count of possession in return for the dismissal of the other counts. The district court in Florida sentenced him to seventy-eight months imprisonment on September 29, 2000.

The district court in the instant case denied Cole's motions to dismiss, concluding that the present prosecution was not barred by either the Florida plea agreement or the Double Jeopardy Clause of the Fifth Amendment. The court thus determined that the Florida conspiracy was not the same offense as the conspiracy and CCE charges here for purposes of successive prosecution analysis.

In addition, the district court informed the parties just before the jury was selected that one of the government's witnesses, Kevin Funches, was the son of his deceased godparents. Based on this disclosure, Cole made a recusal motion "in an abundance of caution" in order to avoid "an appearance of partiality in light of the relationship." The trial judge denied the request for recusal, concluding that he had not had any contact with Funches for over ten years, and thus would have no problem being impartial in presiding over the trial.

Finally, Cole made motions to strike Funches' testimony, grant a mistrial, or grant a new trial based on the government's late, partial production of *Brady* material concerning Funches' extensive history of mental health problems. *See Brady v. Maryland*, 373 U.S. 83 (1963). Cole alleged that the government's failure to timely turn over Funches' complete psychiatric records denied him the right to effec-

---

or about December 9, 1999." On December 12, 2000, the government discovered evidence of Cole's money laundering, which expanded the ending date charged in the instant indictment to August 8, 2000.

tively cross-examine Funches and impeach his credibility with an expert. The district court denied Cole's motions because the government's disclosure was not so late as to prevent Funches from being cross-examined on his psychiatric problems, and because the disclosed materials did not indicate that Funches' disorders had any bearing on his ability to recall events and tell the truth.

On April 17, 2001, the jury found Cole guilty on all counts. The district court then vacated the Count One drug conspiracy conviction on motion of the government because it was a lesser included offense of the Count Two CCE charge. The court sentenced Cole to concurrent terms of life imprisonment on Counts Two and Three, and ordered that they run concurrently with his seventy-eight month sentence in the Southern District of Florida. Cole now appeals.

II.

A.

Cole again asserts that his prosecution is barred by double jeopardy principles. The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. One component of this constitutional guarantee prohibits successive prosecutions for the "same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977); *see also United States v. McHan*, 966 F.2d 134, 137 (4th Cir. 1992); *United States v. Ragins*, 840 F.2d 1184, 1187 (4th Cir. 1988). The Clause thus "provid[es] criminal defendants with a measure of finality and repose," ensuring that one who has endured "the ordeal of criminal prosecution through to judgment" will not be retried "for the same alleged misconduct." *Ragins*, 840 F.2d at 1188. At the same time, however, there is no constitutional immunity from prosecution for distinct criminal activity.

B.

Cole argues that the conspiracy charge in his previous prosecution in Florida was a lesser included offense of the charges for conspiracy, CCE, and murder in furtherance of the conspiracy in contention here. He asserts that the present prosecution is therefore barred because it

violates the Florida plea agreement and his rights under the Double Jeopardy Clause.

We disagree. The conspiracy alleged in the Florida indictment does not bar prosecution on the much more extensive conspiracy and CCE crimes charged here. We address each instant conviction in turn.[2]

1.

Because the Double Jeopardy Clause bars successive prosecutions for the same offense, it forbids "the division of a single criminal conspiracy into multiple violations of a conspiracy statute." *United States v. MacDougall*, 790 F.2d 1135, 1144 (4th Cir. 1986); *see also McHan*, 966 F.2d at 137; *Ragins*, 840 F.2d at 1188. We employ a flexible, "totality of the circumstances" test to determine whether successive conspiracy charges constitute the "same offense." *McHan*, 966 F.2d at 137-38; *Ragins*, 840 F.2d at 1188; *MacDougall*, 790 F.2d at 1144. Specifically, we consider the following five factors in assessing the validity of a double jeopardy attack on a second indictment for conspiracy:

> (1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as co-conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated.

*McHan*, 966 F.2d at 138; *see also Ragins*, 840 F.2d at 1188-89; *MacDougall*, 790 F.2d at 1144.

---

[2]Though the court below vacated the conspiracy conviction, a finding of guilt on that count is a predicate to a finding of guilt on the charge for murder while engaged in drug trafficking. We therefore must decide whether the Florida conspiracy is the same offense as the instant conspiracy.

Each of these factors supports the view that the instant conspiracy is not the same offense as the Florida conspiracy. To begin with, whereas the Florida conspiracy covered a mere sixteen months, here the conspiracy encompasses a ten-year period. Further, the Florida case concerned offense conduct based on just two distinct drug distributions — Cole's July 1998 distribution in Miami to Roberto Cruz, which was later shipped to Cruz's residence in Greenbelt, Maryland, and the October 1999 seizure from Frank Wall in Hanover, Virginia, which Cole had supplied. Here, by contrast, the evidence includes the widespread importation of cocaine from Panama into Miami, and its eventual delivery to Virginia and Washington, D.C.

Moreover, the evidence underlying the Florida indictment implicated only Wall and Cruz as coconspirators. This case, on the other hand, has involved more than fifteen people who conspired with Cole. In addition, the overt acts associated with the Florida indictment centered around the two drug distributions just discussed. In stark contrast, the overt acts of the ten-year conspiracy charged here are, as the government notes, "virtually countless." This is because the nature and scope of the instant offense activities are far more extensive than the conduct charged in Florida.

The government emphasized this point to the district court at sentencing:

> What our investigation uncovered and what the evidence adduced at trial established was that this defendant employed violence and committed countless murders to further a business of flooding the streets with massive amounts of cocaine over a ten-year period.

> And based on what we know about this defendant, I can honestly say that there may never be a more violent person to come before this Court.

The district court agreed with the government's assessment. It said to Cole that "given the extensive evidence presented at the trial about your involvement in the importation of thousands of pounds of cocaine into the country in a widespread distribution network from

Florida to New York, the sentence here seems to be warranted by the evidence."

It is not merely the case that the instant indictment alleges violations of CCE and murder statutes in addition to violations of the distribution and conspiracy statutes charged in Florida. There is also substantial evidence that the present conspiracy implicated the illegal importation of drugs, the use of firearms in connection with drug trafficking, and money laundering. Indeed, whereas the two distributions at issue in the Florida case involved one kilogram and 4.955 kilograms of cocaine, respectively, this prosecution concerned the importation and widespread distribution of hundreds of kilograms of cocaine.

Cole claims that Cruz and Wall were key government witnesses in the instant case, and that their testimony was not limited simply to allegations that Cole had provided them with cocaine that was seized when they were arrested. He further submits that had the Florida case gone to trial, their testimony would surely have been the same there as it was here. He concludes from these assertions that "there is no question that the conspiracy charged in Miami was part of the same conspiracy charged here."

But we cannot reverse a district court's findings based on speculation about what would have happened in another criminal proceeding had it turned out differently. And even if we were to assume the validity of Cole's hypothetical contentions, a host of differences between the two conspiracies still remain — for example, the substantive statutes alleged to have been violated, the evidence of money laundering, the dates of the conspiracies, and the critical evidence provided by such other "key" government witnesses as Kevin Funches. Thus, consideration of each element of the "totality of the circumstances" test compels the same conclusion: The Florida conspiracy and the instant conspiracy are not remotely the "same offense" in the eyes of the Double Jeopardy Clause. *See Brown*, 432 U.S. at 165; *McHan*, 966 F.2d at 137; *Ragins*, 840 F.2d at 1187. Accordingly, Cole's murder conviction is not barred.

2.

Cole also maintains that the present prosecution is barred because the Florida conspiracy is a lesser included offense of the instant CCE

charge. He acknowledges our holding in *McHan* that the use of a conspiracy to which a defendant pleaded guilty as an element of a CCE charge did not violate the Double Jeopardy Clause. *See* 966 F.2d at 141. He further concedes that *McHan* relied upon *Garrett v. United States*, 471 U.S. 773 (1985), and *United States v. Felix*, 503 U.S. 378 (1992). In *Garrett*, the Supreme Court rejected a double jeopardy challenge to a CCE conviction where the defendant had previously pleaded guilty to a predicate crime of importing marijuana. Similarly, *Felix* allowed a conspiracy prosecution after the defendant had been convicted of an underlying substantive offense. In both cases, the Court stressed "the multilayered conduct, both as to time and to place," implicated in CCE and conspiracy offenses. *Garrett*, 471 U.S. at 789; *see also Felix*, 503 U.S. at 390.

Cole submits, however, that "the reasoning of *McHan* has been seriously undermined" by the Supreme Court's subsequent decision in *Rutledge v. United States*, 517 U.S. 292 (1996). In *Rutledge*, the Court held that the "in concert" element of the CCE offense requires proof of a conspiracy that would also violate § 846, and thus that § 846 does not define a different offense from the CCE defined in § 848. Rather, "it is appropriate to characterize § 846 as a lesser included offense of § 848." *Id.* at 300. The Court further observed that *Garrett* "merely adhered to our understanding that legislatures have traditionally perceived a qualitative difference between conspiracy-like crimes and the substantive offenses upon which they are predicated." *Id.* at 300 n.12. "In contrast to the crimes involved in *Garrett*," the Court noted that "this case involves *two* conspiracy-like offenses directed at largely identical conduct." *Id.*

Cole is thus correct that a § 846 conspiracy is a lesser included offense of a § 848 CCE — so long as essentially the same agreement forms the basis for both. He is also accurate in observing that whereas the predicate offenses at issue in *Garrett* and *Felix* were substantive, this case, like *Rutledge*, involves a conspiracy as a predicate offense. *See, e.g.*, *United States v. Singleton*, 177 F. Supp. 2d 12, 29-30 (D.D.C. 2001).

But these are distinctions without a difference to the outcome of this appeal. That is because *Rutledge* was not a successive prosecution case. Rather, the defendant there was prosecuted simultaneously

for, *inter alia*, conspiracy and CCE, which is why the Court under-stood the scenario before it to involve offenses "directed at largely identical conduct." *Rutledge*, 517 U.S. at 300 n.12. But given that the conspiracy and CCE charges here are based on the same agreement (which is why the conspiracy conviction was vacated as a lesser included offense of the CCE), it follows from our application of the "totality of the circumstances" test in the preceding section that the same agreement did *not* form the basis for the Florida conspiracy charge and the instant CCE conviction.

Indeed, it was only in the simultaneous-prosecution context that the Court in *Rutledge* found a double jeopardy violation. The Court ended its opinion by so limiting the scope of its holding:

> In certain circumstances, it may be that the Government will investigate and prosecute an individual for one or more § 846 conspiracies without being aware of facts that would justify charging a defendant with a violation of § 848 as well. Moreover, a lesser included § 846 conspiracy may not always be coterminus with the larger CCE. Because neither instance is true here, we need not explore the consequences of our holding today for purposes of the successive prosecu-tion strand of the Double Jeopardy Clause . . . .

*Id.* at 307 n.17 (citing *Diaz v. United States*, 223 U.S. 442, 448-49 (1912); *Brown*, 432 U.S. at 169 n.7; *Garrett*, 471 U.S. at 786-93).

The Court in *Rutledge* was thus sensitive to a basic distinction between simultaneous and successive prosecution cases. In the simul-taneous prosecution context, the government's knowledge of the defendant's activities is fixed by definition at the time of trial, and separate charges are prosecuted in the same proceeding for reasons of efficiency. A successive prosecution case, by contrast, often occurs because the government learns more after the initial prosecution about the nature and extent of the defendant's criminal misconduct. This is not to say, of course, that the government should be allowed to reprosecute a defendant any time new and highly probative evidence turns up. The Double Jeopardy Clause does not permit reprosecution simply because the government discovers "more evidence strengthen-ing its case." *Ragins*, 840 F.2d at 1193. However, prosecution is not

barred when the government becomes aware of an entirely new dimension of criminal misconduct implicating separate offenses.

This pattern is born out here. The instant prosecution involves misconduct vastly more serious than the previously charged offenses. For example, there is substantial evidence that in furtherance of his drug operations, Cole shot one drug dealer multiple times, ordered the killing of another person who was stuffed in the trunk of a car over a drug debt, and threatened the mother of another man he had shot, all of which involved a magnitude of activity wholly different from what was at issue in the Florida proceeding. In addition, though the parties dispute exactly what the government knew about Cole's drug enterprise in the previous case, Cole does not contest the government's contention that it was unaware of his money laundering until a week before the present case was indicted.[3] And significantly, there is no finding below that the government acted in bad faith by proceeding piecemeal with prosecutions when it had the evidence to bring the instant charges in the Florida case.

The Double Jeopardy Clause may not "be employed to force the Government's hand" by requiring it to prosecute Cole for either the earlier conspiracy or the later CCE, but not both. *Garrett*, 471 U.S. at 790. Rather, "[o]ne who insists that the music stop and the piper be paid at a particular point must at least have stopped dancing himself before he may seek such an accounting." *Id.*

---

[3]It is also noteworthy that Cole stands convicted of operating a CCE until August 8, 2000. By contrast, the ending date in the Florida case was November 1999. Thus, the Florida conspiracy was not "coterminus with the larger CCE." *Rutledge*, 517 U.S. at 307 n.17. Rather, the CCE continued for roughly nine more months as a result of Cole's laundering of drug proceeds during that time.

Cole argues that "[m]oney laundering . . . is not a predicate offense of a CCE charge, and there is no question that the last controlled substance offense alleged was the one connected with Frank Wall's arrest." But this contention is irrelevant. Evidence that Cole engaged in money laundering is highly probative of the government's CCE allegations against him because it suggests that the money constitutes the proceeds of his drug distribution enterprise. Thus, his laundering of drug money justifies the ending date in the present indictment.

Cole's contention ultimately comes down to this: Because he has already been prosecuted for committing some comparatively minor crimes in Florida, the government should be precluded from prosecuting him for some truly horrendous acts in Virginia. But the Florida conspiracy and the CCE did not involve "largely identical conduct." *Rutledge*, 517 U.S. at 300 n.12. Nor was the government "aware of facts" in the Florida proceeding that were critical to the CCE charges here. *Id.* at 307 n.17. And finally, the Florida conspiracy was not "coterminus with the larger CCE." *Id.* For all of these reasons, the instant CCE conviction is not barred by the conspiracy count in the Florida indictment.[4]

### III.

Cole next argues that the district court erred in not crediting his objections to the government's belated disclosure of *Brady* material concerning Funches' long history of psychiatric problems. Cole relates that Funches was the key government witness with respect to the Count Three murder charge. Funches testified that while he and Cole were incarcerated, Cole confessed to him that he had ordered the murder of Armando Leguisamo-Castro over a drug debt. Cole's counsel was not aware of Funches' psychiatric history at the time Funches initially testified. Rather, he learned about it over the extended weekend break following the government's direct case, when he discovered letters Funches wrote to various courts from prison. It was only after raising this issue with the prosecution that same weekend that he

---

[4]We note that the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), likewise does not bar prosecution on the CCE offense. The Florida conspiracy charge and the instant CCE conviction are not the "same offense" under *Blockburger* because the criminal activity at issue here is so multilayered. *See Garrett*, 471 U.S. at 789; *Felix*, 503 U.S. at 390; *McHan*, 966 F.2d at 140. It is true that the Supreme Court in *Rutledge* distinguished *Garrett* and *Felix* as involving substantive predicate offenses, as opposed to § 846 predicates. *See* 517 U.S. at 300 n.12. But it is equally true that here, unlike in *Rutledge*, the CCE conviction is significantly more multilayered than the predicate conspiracy. Both *Garrett* and *Felix* stressed the dangers of transposing "single course of conduct" analysis to situations where the greater offense was multilayered as to time and place.

received part of Funches' presentence report ("PSR") in his latest criminal case, which described his psychiatric history.

Cole asserts that he was entitled to view Funches' complete psychiatric records. He further claims that the government's late, partial disclosure contravened *Brady* and *United States v. Bagley*, 473 U.S. 667 (1985), by denying him the right to effectively cross-examine Funches and impeach his credibility with an expert.

We may reverse the district court's denials of Cole's various motions only for an abuse of discretion. *See United States v. Gravely*, 840 F.2d 1156, 1162-63 (4th Cir. 1988) (motion to strike); *United States v. Dorlouis*, 107 F.3d 248, 257 (4th Cir. 1997) (motion for mistrial); *United States v. Huggins*, 191 F.3d 532, 536 (4th Cir. 1999) (motion for new trial). In reviewing the court's decision on these motions, we find no abuse of discretion in this case.

We certainly do not commend the government for not turning over excerpts of Funches' PSR until the weekend after it completed its direct case against Cole. As any practicing lawyer will attest, one can almost always do a better job with information when one has had more time to prepare. However, under *Brady* and its progeny, the failure to disclose evidence favorable to the accused violates due process only "where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. Evidence is material where "its suppression undermines confidence in the outcome of the trial" — that is, where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 678, 682.

No such reasonable probability exists here in view of the abundance of material that Cole's counsel had at his disposal to effectively impeach Funches. To begin with, Funches was cross-examined about his nine felony convictions, including seven for fraud. Further, Cole's handwriting expert seriously impugned Funches' credibility when he testified that Funches' writing was on the copy of the indictment that was in Cole's possession in jail. Funches had denied ever seeing the indictment, instead claiming that he had learned everything he knew about the case from Cole. Moreover, Funches conceded that he hoped to receive a sentence reduction for cooperating against Cole.

In addition, Cole's counsel ultimately cross-examined Funches at length about his psychiatric history. Funches admitted that he had been treated in the past for bipolar disorder and borderline personality disorder, and that he had received five court-ordered psychological evaluations. He also was cross-examined about his confession to his probation officer that he provided false information on his 1988 psychological examination.[5] Thus, Cole's counsel did receive enough information about Funches' disorders "in time for its effective use at trial." *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985).

It may be inferred from all of this impeachment evidence that the jury knew Funches was essentially a con artist, but that it convicted Cole on all counts anyway. It did so in part because it believed that Funches' testimony, which had been corroborated by others, truthfully described Cole's crimes. In any event, because Funches had been "impeached in so many other ways," *United States v. Hoyte*, 51 F.3d 1239, 1243 (4th Cir. 1995), there exists no reasonable probability that the outcome of Cole's trial would have been any different if Cole's counsel had timely received Funches' complete psychiatric records. Accordingly, the district court did not abuse its discretion in denying Cole's *Brady* motions.

## IV.

Finally, Cole argues that the district court erred in denying his recusal motion after the trial judge revealed that Funches was the son of his deceased godparents. In making the motion, Cole "in no way questioned" the trial judge's integrity, but rather argued "that there was no way of foreseeing what if any issues may arise during the trial with respect to Funches which may necessitate rulings by the Court which might give rise to an appearance of partiality in light of the relationship."

---

[5]The PSR also stated that Funches was "not currently taking any psychotropic medications," that he had been declared competent to continue with previous legal proceedings against him, and that prior PSRs indicated "no history of illicit drug use."

Reviewing the district court's denial of Cole's recusal motion for abuse of discretion, *see United States v. DeTemple*, 162 F.3d 279, 283 (4th Cir. 1998), we disagree. The standard for recusal is not so readily met. As the trial judge informed the litigants, he had not had any contact whatever with Funches for over ten years. And the last time he did see Funches, the trial judge was practicing law and happened to walk into the courtroom where Funches was being sentenced. The judge further related that he had reviewed Canon 3C of the Code of Judicial Conduct for United States Judges (Disqualification), as well as 28 U.S.C. § 455 (Disqualification) and 28 U.S.C. § 144 (Bias or prejudice). Finally, he stressed that he could be fair and impartial in presiding over the trial and issuing various rulings.

This explanation and these assurances dispelled any reasonable concern that the trial judge was somehow biased by virtue of the fact that he knew Funches. There is simply no evidence that the judge's "impartiality might reasonably be questioned," or that "he ha[d] a personal bias or prejudice concerning a party." 28 U.S.C. § 455. In *United States v. Lovaglia*, 954 F.2d 811 (2d Cir. 1992), our sister circuit held that recusal was not required in a case involving a family whose businesses were victimized by the defendants' RICO violations because, *inter alia*, the judge had not had a social relationship with the family for seven or eight years prior to the sentencing proceedings. *Id.* at 816-17. Here, it was over ten years since the trial judge had had *any* contact with Funches, let alone a social relationship.

Cole claims that the denial of his *Brady* motions regarding Funches' psychiatric history created an appearance of partiality requiring recusal. But we have already held that it was not an abuse of discretion to deny them. Further, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . . Almost invariably, they are proper grounds for appeal, not for recusal." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (internal citation omitted). Thus, the district court did not abuse its discretion in denying Cole's recusal motion.

## V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.