IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-3502
_____


IN THE MATTER OF:

CLINTON J. BILLEDEAUX, SR.,

Petitioner.

_____

Petition for Writ of Mandamus and/or Prohibition
to the United States District Court
for the Eastern District of Louisiana
_____

(August 27, 1992)

Before SMITH, EMILIO M. GARZA, and DEMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Clinton Billedeaux, the plaintiff in a maritime lawsuit pending in the United States District Court for the Eastern District of Louisiana styled <u>Billedeaux v. Tidex, Inc.</u>, No. 91-0134, seeks to disqualify the district judge in that suit, the Honorable Edith Brown Clement, on the ground that her husband, Rutledge Clement, is a partner in the law firm of Phelps, Dunbar, Marks, Claverie & Sims ("Phelps, Dunbar"), which, according to Billedeaux, "has actively represented defendant Tidex, Inc., in many other cases." Judge Clement denied Billedeaux's motion for recusal; accordingly, Billedeaux pursues the matter by petition for writ of mandamus or prohibition.

Billedeaux cites a few additional facts and allegations in support of his petition.  These include the fact that before her recent elevation to the bench, Judge Clement was a partner in the law firm of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, which, according to Billedeaux, is "a firm well known for its maritime defense practice."  Billedeaux asserts that Phelps, Dunbar represents Tidex, Inc. ("Tidex"), though of course not in the instant matter, and receives fees therefrom. Billedeaux says that "[t]his fact may well impact on Judge Clement's rulings and decision in the instant matter, which is scheduled for a <u>bench trial</u> . . . ."  From this, Billedeaux surmises that "the economic ties her husband's firm has to Tidex raises [sic] the possibility of partiality, thus falling within the parameters of 28 U.S.C. § 455(b)(1)."

To this, Billedeaux adds that "[b]ecause defendant Tidex is represented in many cases by the Phelps-Dunbar law firm, a portion of Judge Clement's family income comes <u>directly</u> from Tidex.  Further, it appears that Phelps-Dunbar was under consideration by Tidex for referral of this claim for defense . . . ."

## II.

Billedeaux bases his request for disqualification only upon

28 U.S.C. § 455(a) and (b)(1).[1]  These provisions read as follows:

> (a) Any . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

"The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 865 (1988).  A party proceeding under this section "must show that, if a reasonable man knew of all the circumstances, he would harbor doubts about the judge's impartiality." Chitimacha Tribe v. Harry L. Laws Co., 690 F.2d 1157, 1165 (5th Cir. 1982) (citations omitted), cert. denied, 464 U.S. 814 (1983).  Thus, "the view of the average, reasonable person is the standard for analysis . . . ." In re Faulkner, 856 F.2d 716, 720 (5th Cir. 1988) (per curiam).  Since a motion to disqualify is "committed to the sound discretion of the district judge," Chitimacha Tribe, 690 F.2d at 1166, we must decide here only whether Judge Clement abused her discretion.[2]

---

[1] Billedeaux makes no claim for recusal under 28 U.S.C. § 144, regarding actual bias.

[2] In Faulkner, we did not specifically address the abuse-of-discretion standard.  In deciding, however, that "[a] reasonable person easily could question the judge's impartiality," 856 F.2d at 721, we implicitly recognized the efficacy of that standard and held that the district judge had abused his discretion.

                                III.

     The particulars of the Chitimacha decision are instructive
here and ultimately determine our conclusion that no abuse of
discretion has been shown.  There, the plaintiffs asserted that
the district judge should be disqualified because he once had
represented the target defendant.  We noted, though, that "[t]he
fact that [the judge] once represented [the defendant] in
unrelated matters does not forever prevent him from sitting in a
case in which [the defendant] is a party[, as t]he relationship
between [the judge] and [the defendant] is too remote and too
innocuous to warrant disqualification under § 455(a) . . . ."  We
also emphasized that, as here, the firm in question "does not
represent [the defendant] or any other party in this case."  Id.

     There is no assertion that Judge Clement ever represented
Tidex; nor is there an averment that her husband has handled
matters for that client.  The claim, instead, is that her husband
is a partner in a firm that has represented Tidex on various
occasions and that, as a result of that relationship, she and her
husband benefit from fees from that client and that, accordingly,
her impartiality might reasonably be questioned.

     A similar argument was made in Chitimacha Tribe:  The
plaintiffs asserted that the judge was receiving payments from
his former firm, which at times still represented the defendant
and thus might suffer financially if the judge were to rule
adversely to the defendant.  We held that "[a]t best, this
speculation is remote and unrealistic [and] does not justify

                                 4

disqualification."  Id. at 1167.

Here, as well, there is no reason to conclude or speculate that any action Judge Clement might take in the case sub judice would affect Phelps, Dunbar or Judge Clement's husband.  A "remote, contingent, or speculative" interest is not one "which reasonably brings into question a judge's partiality."  In re Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1313 (2d Cir. 1988), cert. denied, 490 U.S. 1102 (1989).  Thus, any interest of Judge Clement's is too remote and speculative to support or suggest recusal.

IV.

Chitimacha Tribe is binding precedent in this circuit; its facts are so closely analogous to those in the case sub judice that we believe recusal here was not called for.[3]  Even if we did not have Chitimacha Tribe to guide us, however, we would conclude that Judge Clement is not disqualified.  The proper test, as we have stated, is whether "a reasonable person, knowing all the circumstances," would believe it improper for the judge to sit in the case in question."  Liljeberg, 486 U.S. at 861.

If a reasonable person knew all the relevant facts, he or she would know that any interest that could be attributed to

---

[3] In his dissenting opinion, Judge DeMoss states that Chitimacha Tribe is not dispositive, but he makes no further mention of the case nor attempts to explain why it is not binding authority or, with its similar facts, at least persuasive enough authority to guide our decision in this case.  Instead, he relies only upon three general propositions with which we do not disagree but which, unlike the rationale in Chitimacha Tribe, have no specific application to the question posed in the case sub judice.

5

Judge Clement in the fate of her husband's law firm's sometime client is so remote and speculative as to dispel any perception of impropriety. Thus, there was ample reason for Judge Clement to conclude that there was no reason to grant the motion for recusal.

V.

Finally, even if we were not convinced that, on a de novo basis, the decision was correct, we could not conclude that Judge Clement abused her discretion in so deciding. In reviewing a district court's denial of a motion to recuse, "we ask only whether [the judge] has abused that discretion." Chitimacha Tribe, 690 F.2d at 1166.[4] Certainly, in regard to an interest that is, at best, theoretical, Judge Clement was well within her discretion in refusing to step aside.[5]

The petition for writ of mandamus and/or prohibition is DENIED.

**DeMOSS, Circuit Judge, dissenting:**

I do not share the view of my colleagues on this panel that Chitimacha Tribe is determinative of this case. Rather, I think

---

[4] The dissent takes no cognizance of the abuse-of-discretion standard but, instead, appears to decide the case on a de novo basis.

[5] Our dissenting colleague takes the view that one reason for requiring recusal here and announcing the same as a rule of law is that this circumstance "will occur with increasing frequency as the distribution of men and women in the legal profession continues to become more equal." While the prediction of a more salutary ratio of men to women is both correct and welcome, the adoption of a rule that increases the need for recusals by the jurist spouse can only serve to make such arrangements more difficult and hence less desirable.

7

the later cases of Health Services Acquisition Corp. v. Liljeberg, 796 F.2d 796 (5th Cir. 1986); the Supreme Court Decision in the same case, Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 855 (1988); and In re Faulkner, 856 F.2d 716 (5th Cir. 1988) establish the following principles:

A.   The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible. Liljeberg, 108 S. Ct. at 2205;

B.   Scienter is not an element of a violation of § 455(a). Liljeberg, 108 S. Ct. at 2202;

C.   The test is whether the average reasonable person, knowing all of the circumstances, might question the impartiality of the judge. In re Faulkner, 856 F.2d at 721.

Under the facts of this case the question becomes, would the average person be reasonable in questioning the impartiality of a Trial Judge in a personal injury action where the judges' spouse was a partner in a major law firm that represented the corporate defendant in other litigation matters, but not in the case before the judge. The circumstance that a Trial Judge has a spouse who is actively engaged in the practice of law will occur with increasing frequency as the distribution of men and women in the legal profession continues to become more equal. I think the average person looks upon the relationship between spouses as the

8

closet of all human relationships; and rightly or wrongly, it is my perception that the average person would doubt the ability of a judge and spouse to maintain a "Chinese wall" between their professional responsibilities. Perhaps if the question were posed in the abstract, you would get a different answer; but, my gut tells me that if the average person is asked whether he would feel comfortable having his own personal injury case tried by a judge whose spouse was a partner in a law firm that represented the defendant in other matters, the answer would be, "Would the judge really be impartial?" I think that question is reasonable; and the mandatory language of § 455 requires recusal.

I would add two comments from the standpoint of policy and judicial administration. In our federal district courts located in large metropolitan areas, where assignments of cases are done initially on a random rotation basis and where there are several other judges to whom the case can be referred, I think the call in close cases (which is the case before us), should favor recusal. Likewise, when the issue of disqualification is raised prior to trial (as it has been in this case), a call in close cases should lean toward recusal as a matter of efficient judicial administration because the final decision making stage of the litigation is thereby insulated from the waste and inefficiency which would result from a later determination that § 455 had not been complied with.

Obviously none of my comments herein should be construed as reflecting on the integrity or suggesting actual impartiality on

the part of the Trial Judge in this case or her spouse.

I would **GRANT** the writ of mandamus.