**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 93-2376

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

BETTY JORDAN,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

(March 24, 1995)

Before REYNALDO G. GARZA, WIENER, and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Defendant appeals her convictions of wire fraud and money laundering. We find that the district judge abused her discretion for failing to recuse herself pursuant to 28 U.S.C. § 455(a), as the facts underlying this case create an appearance of impropriety. After reviewing the record we have concluded that the conviction should stand. The sentence, however, must be vacated in order to maintain the integrity of the judicial system. Accordingly, we ask

1

the Chief Judge of the Fifth Circuit to designate a judge outside of the Southern District of Texas to resentence Appellant and hold any other appropriate proceedings necessary to effectuate this opinion.

## Background

Defendant and her husband owned the Houston-based trucking company, Irish & Cherokee Transportation, Inc (ICT). Defendant directed the financial operations of ICT. Redex, a Salt Lake City-based corporation, was engaged in the business of factoring trucking company's freight invoices.[1] ICT executed an agreement with Redex in February of 1987 to sell its overdue accounts receivable to Redex.

Defendant fabricated invoices by creating forty-five company names to identify purported shippers with which ICT did business. These fictitious invoices were then combined with legitimate invoices and sent to Redex. ICT factored over 500 invoices through Redex during the period alleged in the indictment. The total loss suffered by Redex due to the fictitious accounts totalled approximately $800,000.00. Defendant transferred the factored funds through several banks in different states by wire transfer.

On June 25, 1992, in the United States District Court for the Southern District of Texas, Defendant was indicted for wire fraud and money laundering. After a jury trial, Defendant was convicted

---

[1]Factoring involves the buying of overdue accounts receivable at a discount and then attempting to collect on the overdue accounts.

2

of two counts of money laundering and nine counts of wire fraud. The Honorable Judge Melinda Harmon sentenced Defendant to concurrent terms of five years' imprisonment for each wire fraud conviction, and to consecutive terms of twenty years' imprisonment for the money laundering convictions.[2]  Defendant was also ordered to pay the unpaid balance of $418,921.00.  This appeal ensued.


## I.

The substance of Appellant's complaint is that, because of the relations between Judge Melinda Harmon and Michael Wood, the publicity and bad feelings arising from a series of legal incidents that occurred several years earlier, and the lengthy sentence term imposed, a reasonable person would question Judge Melinda Harmon's impartiality.  Courts have repeatedly expressed the importance of an impartial judiciary:  "[o]ne of the fundamental rights of a litigant under our judicial system is that he is entitled to a fair trial in a fair tribunal, and that fairness requires an absence of actual bias or prejudice in the trial of the case."  United States v. Wade, 931 F.2d 300, 304 (5th Cir.) (quoting United States v. Brown, 539 F.2d 467, 469 (5th Cir. 1976)), cert. denied, 112 S.Ct. 247 (1991);  In re Murchison, 349 U.S. 133, 136 (1954).  The right to a fair and impartial trial is fundamental to the litigant; fundamental to the judiciary is the public's confidence in the impartiality of our judges and the proceedings over which they

_____

[2]One of the money laundering sentences was later suspended pending five years' probation.

preside.  "Justice must satisfy the appearance of justice."  <u>In re Murchison</u>, 349 U.S. at 136.  This is the very purpose of 28 U.S.C. § 455(a);  Section 455(a) provides that a judge shall recuse herself from any proceeding in which her impartiality might reasonably be questioned.  The Supreme Court, in <u>Liljeberg v. Health Services Acquisition Corp.</u>, 486 U.S. 847, 860-61 (1988), described the standard as whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality.[3]  "The goal of section 455(a) is to avoid

---

[3]The dissent contends that <u>Liteky v. United States</u>, 127 L.Ed.2d 474 (1994), has modified this standard to require an "impossibility of fair judgment" test.  A thorough reading of the opinion, however, reveals that <u>Liteky</u> has not changed the § 455(a) recusal standard, nor is the impossibility of fair judgment test implicated in the case <u>sub judice</u>, nor is the extension proposed by the dissent warranted.  The Supreme Court was faced with the issue of determining whether the "extrajudicial source" doctrine survived the amended version of § 455(a).  The traditional meaning of the extrajudicial source doctrine is that a recusal motion must be based on a source outside of the proceedings.  To state it in the negative, recusal can not be based on an opinion or bias developed during the course of judicial proceedings.  The Court held that while § 455(a) does not require an opinion of a judge to originate from a source outside of the proceedings to create an appearance of impartiality, opinions formed during the proceedings do not constitute a basis for recusal unless the opinion "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible."  <u>Id.</u> at 491.
    The Court neither stated nor implied that this impossibility of fair judgment test would supplant the reasonable person standard in cases involving alleged bias from an extrajudicial source.  The Court found recusal unwarranted in <u>Liteky</u> because "all [the grounds for recusal] occurred in the course of judicial proceedings <u>and</u> neither (1) relied upon knowledge acquired outside such proceedings, nor (2) display deep-seated and unequivocal antagonism that would render fair judgment impossible."  It is clear that if and only if the allegations of bias arose from the proceedings is the impossibility of fair judgment test implicated.  In fact, the concurrence criticized the majority for creating a different and more stringent standard for allegations of intrajudicial bias.  The concurrence discerned no reason for requiring <u>two</u> different standards, one for the extrajudicial source, and one for the

4

even the appearance of partiality."  Id. at 860.  Put simply, avoiding the appearance of impropriety is as important in developing public confidence in our judicial system as avoiding impropriety itself.

In 1989, Appellant owed a judgement in state court.[4]  Michael Wood was appointed receiver over ICT, Appellant's company.  Both sides concede that a hostile relationship developed between Michael Wood and Appellant due to the receivership appointment.  On November 21, 1989, Appellant allegedly attempted to drive a truck off ICT property in violation of the receivership arrangement. Michael Wood attempted to stop her.  Appellant's daughter

_____

intrajudicial source of alleged bias.

Moreover, we disagree with the dissent and refuse to extend the impossibility of fair judgment test to situations for which the standard was not designed.  To apply this limited standard universally would destroy the § 455(a) appearance of impartiality standard by effectively requiring a showing that the judge actually harbored "deep-seated favoritism or antagonism that would make fair judgment impossible."  The standard for recusal in situations like the case sub judice, continues to be whether a reasonable person, knowing all the facts, would question the judge's impartiality.

[4]The facts underlying the series of incidents between Michael Wood and Appellant are not crystal clear.  Provided in the trial record is Appellant's affidavit.  Additionally, upon request of this Court, the parties supplied us additional information.  The facts discussed in this opinion are compiled mainly from the information provided to this Court by the parties on appeal.  It is not clear whether Judge Melinda Harmon was aware of the details underlying the incidents between Michael Wood and Appellant. Assuming that Judge Melinda Harmon was unaware of all the facts, however, does not foreclose recusal.  We are not asking that the Honorable Judge Melinda Harmon have performed the impossible, that is, to disqualify herself based on some facts she did not know.  As Liljeberg has made clear, facts not known at the time of the recusal motion are still considered in determining whether the judge should have been recused.  Liljeberg, 486 U.S. at 861. Section 455(a) may be applied retroactively by rectifying an oversight and taking the steps necessary to maintain public confidence in the impartiality of the judiciary.

interposed her car between Michael Wood and Appellant, effectuating Appellant's escape. On November 29, 1989, Michael Wood filed a motion for contempt in the civil bankruptcy receivership case. The state district court granted the motion and Appellant was placed in custody. On appeal the order was overturned. On January 5, 1990, Michael Wood filed theft charges against Appellant and her daughter. On February 1, 1990,[5] Appellant's daughter filed criminal assault charges against Michael Wood for slapping and threatening her as well as for running into her car. Michael Wood was arrested and incarcerated. Francis Harmon, Judge Melinda Harmon's husband, represented Michael Wood in this criminal proceeding. Finally, in 1992, Appellant was indicted for wire fraud and money laundering involving ICT, the same company for which Michael Wood was appointed receiver.

Michael Wood and Judge Sharolyn Wood, Michael Wood's wife, were law school classmates of Judge Melinda Harmon and her husband. They were friends of twenty-two years as of the time of the above-mentioned incidents. In fact, Francis Harmon is quoted as stating that he did not visit the district attorney concerning the assault charges as Michael Wood's attorney but as his friend. Francis Harmon and Michael Wood had been law partners for six years.

It is clear that there exists no small amount of resentment and animosity, if not blind hatred between Michael Wood and

---

[5]According to the materials provided by the parties, Appellant's daughter attempted three times to level charges against Michael Wood for the November 21, 1989 incident. However, the DA's office allegedly lost the first two complaints.

Appellant. The question is whether Judge Melinda Harmon's friendship with Michael Wood might cause a reasonable person, who knew of the underlying facts, to harbor doubts about Judge Melinda Harmon's impartiality; whether their long and continuous friendship and the above-discussed incidents raise a Section 455(a) appearance. Because recusal motions are committed to the sound discretion of the district court, the issue on appeal is whether the court abused its discretion by answering the above question in the negative.

## II.

We hold that the reasonable person would harbor doubts about Judge Melinda Harmon's impartiality. Liljeberg held that Section 455(a) is an objective inquiry. This is essential when the question involves appearance. Therefore, we ask how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person. See In Re Mason, 916 F.2d 384, 386 (7th Cir. 1990). The Seventh Circuit recognized the problem with implementing this objective standard. Id. Judges must ascertain how a reasonable person would react to the facts. Problematic is the fact that judges do not stand outside of the judicial system; they are intimately involved in the process of obtaining justice. Judges who are asked to recuse themselves are reluctant to impugn their own standards. Likewise, judges sitting in review of others do not like to cast aspersions. "Yet drawing all inferences favorable to the honesty

7

and care of the judge whose conduct has been questioned could collapse the appearance of impropriety standard under § 455(a) into a demand for proof of actual impropriety." Id. Accordingly, we are mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary.

The Fifth Circuit has established a body of case law applying the Section 455(a) standard. Unfortunately, but not surprisingly, no case is precisely on point; after all, each § 455(a) case is extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances more than by comparison to situations considered in prior jurisprudence. This Court has ruled, in factually limiting circumstances, that friendship between the judge and a person with an interest in the case is not sufficient grounds to reverse a judge's failure to recuse.[6] Nevertheless, the facts before us create a Section 455(a) appearance. The judges's close personal friend, a prominent and successful Houston lawyer, was accused of criminal assault; it appears that he was the subject of an abuse of criminal process

---

[6]For example, in Vieux Carre Property Owners v. Brown, 948 F.2d 1436 (5th Cir. 1991), the judge had a close personal and political relationship with the Mayor, who had a significant political stake in the outcome of the case. The sole reason urged by Vieux Carre's motion to recuse was the temporal proximity of the mayoral election and the mootness hearing. Because the district court adequately removed any possible harm from the public's perception of impropriety by postponing that hearing until after the election, this Court held that recusal was not necessary. See also Henderson v. Dept. of Public Safety, 901 F.2d 1288 (5th Cir. 1990) (holding that the appellant's allegations that the judge has known opposing counsel since he was a kid and were good friends was not sufficient for recusal; "an investigation into the facts would have undermined the tenuous conclusion of bias that even Penn would draw from the hearsay statements upon which he based his motion").

8

through charges brought by Appellant.[7] Michael Wood and Appellant were embroiled in a series of vindictive legal actions resulting in a great deal of publicity, potentially besmirching Michael Wood's name. Some of that publicity brought out the fact that Michael Wood's wife was a state district judge, and brought out the relationship between Michael Wood and Judge Melinda Harmon's lawyer-husband. Under these particular circumstances, is what happened to Michael Wood enough to cause a reasonable person to doubt the impartiality of Judge Melinda Harmon -- Michael Wood's good friend, Michael Wood's wife's good friend, and Michael Wood's lawyer and former partner's wife -- as she plays no small part in determining the fate of the person who caused Michael Wood to be incarcerated? We think yes.[8] Public respect for the judiciary demands this result.

> [Our] stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of

---

[7]The charges were actually brought by Appellant's daughter, but, as the government conceded, the actions of the daughter and Appellant cannot be separated because they acted in concert.

[8]The government argued that Michael Wood was fully vindicated from the criminal allegations. Therefore, Judge Harmon would not harbor any actual bias against Appellant. We do not contest this. We offer no opinion as to whether Judge Harmon was actually biased; it is the appearance of impropriety with which we are concerned. How many times has one heard the following statement: "He can say anything he wants about me, but he can't talk about my friend." Michael Wood may not care what Appellant has said about him, but a good friend may forever harbor animosity against someone who has taken a prominent lawyer and put him through unwarranted criminal proceedings and negative publicity.

9

justice."[9]

Where Appellant was involved in an extremely hostile relationship with a person of such a long, close, and multi-faceted friendship with Judge Melinda Harmon, a relationship that resulted in extensive negative publicity, and where Appellant's liberty was at stake before this very Judge, we are convinced that a reasonable person would question the impartiality of the district judge.[10]

---

[9]In Re Murchison, 349 U.S. 133, 136 (1955) (quoting Offutt v. United States, 348 U.S. 11, 14 (1954)).

[10]The dissent takes the majority to task for not regurgitating all of this circuit's jurisprudence on § 455(a), which jurisprudence the dissent views as creating a "continuum." We discern no such continuum; neither do we find a circuit mandate to imply one. What the dissent actually does is discuss two lines of cases, one requiring recusal, the other affirming the court's refusal to recuse. The dissent places the facts of this case in the latter line of cases, "especially those concerning involvement of the judge's spouse." We disagree for several reasons. First, we see nothing more than a parsing of our prior cases into two pots, one containing those cases in which an appearance of impropriety was found and the other containing those cases in which such appearance was not found. That is certainly no "continuum"; just an inventory exercise. Next, we believe the facts of the case sub judice fit more closely in the former category. We are not dealing with a judge making minor contributions to a party's campaign, having a sporadic friendship with counsel, presiding over a case where the judge's spouse was a student at the defendant's university, or any of the other situations listed in the dissent. The appearance of impropriety is unmistakable in the facts before us. Second, although Judge Melinda Harmon's spouse was involved in the "situation," that is not the focus of our analysis. Judge Harmon's close friendship with John Wood and his jurist-spouse and the besmirching and vindictive actions taken against him concerns us more than Judge Harmon's husband's relationship to the incidents. Third, Appellant's liberty is at stake. The integrity of the judiciary is impugned. While the standard of recusal is the same in both civil and criminal cases, we are uncomfortable in blindly relying upon civil cases in determining whether a judge presiding over a felony trial should recuse. Though even the Supreme Court engages in cross-over citations, we must look both ways more carefully when crossing this dangerous street from the civil side to the criminal side than we do when crossing in the opposite direction.

10

Accordingly, we hold that Judge Melinda Harmon abused her discretion in failing to recuse herself.[11]

## III.

We must now consider the appropriate remedy for the breach of Section 455(a). Although Section 455(a) defines the circumstances that mandate disqualification of federal judges, it silently delegates to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation. Liljeberg, 486 U.S. at 862. We hold that a violation of Section 455(a) does not automatically require a new trial. See id. (stating that "there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance"); United States v. Wade, 931 F.2d 300, 304 n.5 (5th Cir.) (stating that even if a movant were to meet the § 455(a) test requiring recusal, this may not be sufficient for the ordering of a new trial), cert. denied, 112 S.Ct. 247 (1991); United States v. Couch, 896 F.2d 78 (5th Cir. 1990) (holding that the appellant's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process requiring a new trial). Disqualification under Section 455(a) is designed for the benefit of the judicial system, and even if a judge errs in failing to recuse herself, the error does not necessarily call into question the decisions of the court.

After a thorough review of the trial record, we are convinced

---

[11]Because we have determined that the district court breached Section 455(a), we do not reach the issues raised under Section 144.

11

that the conviction should stand. First, Appellant does not contend that Judge Melinda Harmon was <u>actually</u> biased during the trial phase, nor does she allege an explicit nexus between the alleged errors and the appearance of bias. Second, Appellant never contends that she suffered any harm during trial because of any alleged bias or prejudice. Third, we find neither an indication of bias in the trial record nor any error requiring reversal.

Appellant asserts several errors, including prosecutorial misconduct, improper evidentiary rulings, and improper jury instructions. During closing argument both Appellant and Appellee commented on the fact that a witness had not been called. Both parties implied that failing to call the witness indicated that the witness would hurt the other's case, respectively. Appellant argues that the prosecution's comments improperly shifted the burden of proof. Judge Melinda Harmon properly instructed the jury that the burden is upon the prosecution and that the defense need not bring forth any testimony, witnesses, or evidence. Considering the responsive nature of the prosecution's comment and the instruction and charge given to the jury, we find neither error nor any indication of bias.[12] Appellant also contends that the court erred in admitting Exhibits 282 through 2032. During trial, the

_____

[12]<u>See</u> <u>United States v. Ivey</u>, 550 F.2d 243, 244 (5th Cir.) (holding that comments by the prosecution were not improper because they were in response to defense's argument, and an instruction was given), <u>cert. denied</u>, 431 U.S. 943 (1977); <u>United States v. Celcer</u>, 500 F.2d 345, 346-47 (5th Cir. 1974) (holding that comment, if error, was rendered harmless by an instruction and charge that the burden was on the government and that the defendant was not under any duty to present evidence), <u>cert. denied</u>, 421 U.S. 911 (1975).

witness went through Exhibits 1 through 281, one by one, identifying each as a document she prepared or one that she recognized as prepared by a specific co-worker. In order to speed up the process, Judge Melinda Harmon admitted all the exhibits, making it abundantly clear that Appellant was free to question any witness about any exhibit on cross-examination. This procedure is in accord with Fifth Circuit case law;[13] again, we find neither error nor any indication of bias. Appellant also complains that the court did not properly instruct the jury. Upon review of the indictment, the instructions, and the applicable law we are of the opinion that the "jury instructions . . . as a whole [are] a correct statement of the law." United States v. Faulkner, 17 F.3d 745, 766 (5th Cir. 1994). In sum, the trial appears to have been managed properly and we find neither an indication of bias nor an error requiring reversal.[14]

The sentence is a different matter altogether. Appellant was sentenced to five years' imprisonment for each of her wire fraud convictions, which would run concurrently. Appellant was sentenced to twenty years' imprisonment for each of her two money laundering convictions to run consecutively to her wire fraud convictions. One of her money laundering sentences was suspended, and she was to

---

[13]United States v. Evans, 572 F.2d 455, 490 (5th Cir.) (finding no error when "the district court admitted [a] long series of exhibits together, [providing] it was repeatedly done with the provision that any specific objection that defense counsel desired to raise at a later time regarding a particular exhibit would be entertained"), cert. denied, 439 U.S. 870 (1978).

[14]We have considered Appellant's other points of error, and though we do not find them meritless, they do not require reversal.

be placed on probation for five years to commence upon her release from confinement.

This sentence <u>seems</u> excessively harsh. Appellant, a first time offender, was to serve 300 months in prison, followed by five years' probation, for non-violent white collar crimes. The apparent harshness of the sentence, the essentially unbridled sentencing discretion of Judge Melinda Harmon in this pre-Guidelines case,[15] the appearance of impropriety, and the allegations by Appellant that her fears of bias were realized in the sentencing requires this Court to vacate the sentence.[16] The integrity of the judicial system needs the rehabilitation that would be gained by vacating the sentence and resentencing Appellant. Affirming the sentence would only compound the damage done.

We embrace the method utilized in <u>Couch v. United States</u>,[17] in dealing with this sensitive situation. In <u>Couch</u> the Chief Judge of the Fifth Circuit assigned the case to a judge outside of the district in which it originated to adjudicate the claims of partiality. Judge Walter confirmed the conviction concluding that

---

[15]The fact that the Presentence Report recommended the maximum is not dispositive. The report does not insulate or negate the appearance of impropriety; a reasonable person would question the impartiality of Judge Melinda Harmon.

[16]Again, we must stress that we are not offering our opinion on whether Judge Melinda Harmon was actually biased; it is the appearance of impropriety and its effect on our judicial system with which we are concerned.

[17]896 F.2d 78 (5th Cir. 1990).

14

no actual partiality existed.[18]   However, in order to avoid the appearance of partiality, Judge Walter resentenced the defendant. Though Couch dealt with a habeas situation, which called for a lesser standard than does our appeal, we nonetheless believe that a similar approach is needed in the case before us.  Section 455(a) silently delegates to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation. Liljeberg, 486 U.S. at 486. "The goal of Section 455(a) is to avoid even the appearance of partiality." Id. at 860.  In order to serve that goal, in this case, the sentence must be vacated.

Consistent with this opinion, we AFFIRM the conviction, VACATE the sentence, and ask the Chief Judge of the Fifth Circuit to designate a judge outside of the Southern District of Texas to resentence Appellant and hold any other appropriate proceedings necessary to effectuate this opinion.[19]

---

[18]As we have done here.

[19]The dissent, in footnote 21, contends that our remedy implies that disqualification of one judge disqualifies all the judges of that district.  This is not the impression we want to leave the reader.  If Judge Melinda Harmon had recused herself from the proceedings, another judge of the Southern District of Texas could have easily presided over the case.  Because we find the district judge abused her discretion, we want to avoid placing one of her colleagues in the uncomfortable position of effectively passing on her rulings in the sentencing hearing.  Moreover, having one of her own colleagues in her district pass on her past actions well might, in and of itself, exacerbate the appearance of impropriety.  The public may not look favorably upon a system that allows one colleague to pass on the impartiality of another colleague who works closely with the questioned judge.  As discussed supra, judges sitting in review of other judges do not like to cast aspersions, especially upon colleagues in the same district with whom they work so intimately and confer so frequently. Accordingly, we have taken the additional precaution of asking that a judge from another district be appointed to resentence Appellant.

AFFIRMED in part, VACATED in part.


EMILIO M. GARZA, Circuit Judge, dissenting:

Because the majority fails to apply the most recent Supreme Court guidance on 28 U.S.C. § 455(a)[20] and neither applies nor distinguishes the plethora of existing Fifth Circuit caselaw on § 455(a), I respectfully dissent.

The most recent Supreme Court case on § 455(a), *Liteky v. United States*, ___ U.S. ___, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994), modifies § 455(a)'s objective standard, first announced in *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988). Although the factual circumstances of *Liteky* primarily concerned the "extrajudicial source" doctrine, Justice Scalia also analyzed § 455(a) in broader terms. Specifically, *Liteky* describes the objective standard of § 455(a)[21] as an "impossibility of fair judgment" test, *id.* at ___,

---

We are not imputing one judge's disqualification to the district in which she sits; we are taking the proven precaution that we feel is appropriate to handle this particular kind of situation.

[20]     Section 455(a) states that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

[21]     The resolution of a § 455(a) question is an objective inquiry. *See Liteky*, ___ U.S. at ___, 114 S. Ct. at 1153-54 (requiring all § 455(a) questions "to be evaluated on an *objective* basis, so that what really matters is not the reality of bias or prejudice but its appearance"); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988) (imposing objective standard); *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1111 (5th Cir.) (holding that the "goal of the judicial disqualification statute is to foster the *appearance* of impartiality"), *cert. denied*, 449 U.S. 820, 101 S. Ct. 78, 66 L. Ed. 2d 22 (1980); *id.* (noting that § 455(a) deals with appearance of impartiality, not actual bias or prejudice); *see also In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988) ("[T]he test to be applied is an objective one which assumes that a reasonable person *knows and understands all the relevant facts*." (emphasis in original)), *cert. denied*, 490

16

114 S. Ct. at 1157; *see also id.* at ___, 114 S. Ct. at 1161 (Kennedy, J., concurring) (discussing "[t]he Court's `impossibility of fair judgment' test"), and to require "a deep-seated favoritism or antagonism that would make fair judgment impossible," *id.*[22]  I fail to find any indication in *Liteky* that limits this description to the appearance of bias created by judicial comments during the trial.  Accordingly, I read *Liteky* to prescribe a standard narrower than the "person on the street" standard the majority appears to use.

Second, other than *Vieux Carre Property Owners v. Brown*, 948 F.2d 1436, 1448 (5th Cir. 1991), and *Henderson v. Department of Public Safety & Corrections*, 901 F.2d 1288 (5th Cir. 1990), *see* slip op. at 8 n.6, the majority does not discuss the many Fifth Circuit and other cases applying § 455(a).  This line of cases sets up a continuum between opposite poles))one requiring recusal; the other, not.  The majority makes no attempt to place *Jordan* on this continuum, and it does not distinguish or support the *Jordan* decision in accordance with this caselaw.

"[I]t is critically important in a case of this kind to identify the facts that might reasonably cause an objective observer to question [a judge's] impartiality."  *Liljeberg*, 486

U.S. 1102, 109 S. Ct. 2458, 104 L. Ed. 2d 1012 (1989); *In re Mason*, 916 F.2d 384, 385 (7th Cir. 1990) ("Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits.").

[22]    *Liljeberg*, on the other hand, describes the standard as whether a reasonable, objective observer, knowing all the facts, would question the judge's impartiality.  486 U.S. at 860-61, 108 S. Ct. at 2203.  *Liteky*'s "impossibility of fair judgment" standard therefore clarifies the threshold of "reasonableness" in this context.

U.S. at 865, 108 S. Ct. at 2205. Special emphasis should be placed on identifying those facts material to our § 455(a) analysis. *See, e.g., id.* at 865-67, 108 S. Ct. at 2205-06. In my view, this case requires us to determine whether a longstanding friendship, coupled with supposed "bad blood" between a judge's friend and the defendant, is enough to support a holding of abuse of discretion in relation to "appearance of partiality."

"`Partiality' does not refer to all favoritism, but only to such as is, for some reason, wrongful or inappropriate." *Liteky*, ___ U.S. at ___, 114 S. Ct. at 1156. "[B]ad appearances alone should not require disqualification to prevent an unfair trial." *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1371 (7th Cir. 1994). "Not every `possible temptation' to be biased presents a sufficient probability of bias to require disqualification." *Id.* at 1372. Because recusal is warranted "when a judge has a *direct* personal or fiduciary interest," *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992), courts have required recusal where the judge's relative was involved in the case,[23] where the judge's law clerk accepted employment with a party's counsel,[24] where counsel for one party had represented the judge,[25] where a partner of one party's counsel was the judge's

---

[23]    *In re Faulkner*, 856 F.2d 716, 721 (5th Cir. 1988).

[24]    *Hall v. Small Business Admin.*, 695 F.2d 175, 179 (5th Cir. 1983).

[25]    *Potashnick*, 609 F.2d at 1111.

18

former law clerk,[26] or where the judge had a fiduciary responsibility to a party in interest.[27] In contrast, courts do not insist on recusal where the judge's interest is "remote, contingent, indirect or speculative," *Lovaglia*, 954 F.2d at 815, such as where the judge had made only minor contributions to a party's campaign,[28] where the judge delayed a hearing until a close friend would no longer be interested in the outcome,[29] where the judge's spouse was a student at the defendant university,[30] where the judge had a sporadic friendship with counsel,[31] where the friendship between the judge and the victim had ended several years before the case,[32] where the judge's son represented a non-party entity in which a party had an interest,[33] where the judge's spouse was involved in a separate transaction with a party,[34] or where the judge's spouse was a partner in the law firm that had represented

---

[26] *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524-25 (11th Cir. 1988), *cert. denied*, 490 U.S. 1066, 109 S. Ct. 2066, 104 L. Ed. 2d 631 (1989).

[27] *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 108 S. Ct. 2194, 2206-07, 100 L. Ed. 2d 855 (1988).

[28] *Mason*, 916 F.2d at 387.

[29] *Vieux Carre Property Owners v. Brown*, 948 F.2d 1436, 1448 (5th Cir. 1991).

[30] *Levitt v. University of Texas at El Paso*, 847 F.2d 221, 225-26 (5th Cir.), *cert. denied*, 488 U.S. 984, 109 S. Ct. 536, 102 L. Ed. 2d 567 (1988).

[31] *Henderson v. Department of Public Safety & Corrections*, 901 F.2d 1288, 1295-96 (5th Cir. 1990).

[32] *Lovaglia*, 954 F.2d at 816.

[33] *United States v. Miranne*, 688 F.2d 980, 985 (5th Cir. 1982), *cert. denied*, 459 U.S. 1109, 103 S. Ct. 736, 74 L. Ed. 2d 959 (1983).

[34] *In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1314-15.

a party on other matters.[35] In my view, the facts of this case fit most closely with the latter group of cases, especially those concerning involvement of the judge's spouse, in which the judge did not abuse his discretion.[36] Indeed, in these cases, no recusal was required even though the judge's spouse was connected with a *party* to the case.[37] Here, the source of the challenged connection))Michael Wood))is not a party. Friendship plus the speculation of retaliation is not enough.[38] Whether we apply *Liteky*'s "impossibility of fair judgment" test or Fifth Circuit precedent, I would affirm Judge Harmon's decision.

The majority states that "each § 455(a) case is extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances, more than by comparison to situations considered

---

[35] *In re Billedeaux*, 972 F.2d 104, 105-06 (5th Cir. 1992).

[36] *See In re Billedeaux*, 972 F.2d at 105-06; *In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1314-15; *Levitt*, 847 F.2d at 225-26; *see also supra* notes 10, 14, 15, and accompanying text.

[37] The majority suggests that Judge Harmon's connection to Wood is more important than that of her spouse. Slip op. at 10 n.10. I question this conclusion because Mr. Harmon's connection to Mr. Wood was much closer and more involved than that of the judge. Because a mere friendship between Judge Harmon and Wood would not have required recusal in this case, only the past interactions of Wood and the defendant could have brought the friendship into question. However, as counsel stated at oral argument, Judge Harmon's knowledge, if any, of the past altercation, derived from her spouse's informing her of it. Accordingly, I maintain that the connection of Judge Harmon's spouse is a critical focus of this case.

[38] For example, a party or counsel may have offended the judge in a prior case, or even the same case. The judge may disagree with the party or counsel's political or moral views. *See, e.g., Liteky*, ___ U.S. at ___, 114 S. Ct. at 1150-51. A party or counsel may have fought bitterly with the judge's former law partner. Indeed, a party may have murdered the judge's colleague. *See United States v. Harrelson*, 753 F.2d 1153 (5th Cir.), *cert. denied*, 474 U.S. 908, 106 S. Ct. 277, 88 L. Ed. 2d 241 (1985). The specter of retaliation by the judge is present in each of these examples, yet we require recusal in none of them. The possibility in this case is equally remote))without a higher probability, it is insufficient.

in prior jurisprudence." *See* slip op. at 8. Having said that, the majority feels free to ignore prior § 455(a) caselaw. However, as an appellate court, we have an obligation to provide district court judges with some semblance of legal principles against which they may measure their conduct. My "parsing of our prior cases," slip op. at 10 n.10, is simply that))an attempt to identify a principled basis for decision underlying the resolution of each case. The majority's opinion, to quote a dissenter in *Liljeberg*, is "long on ethics in the abstract, but short on workable rules of law." *Liljeberg*, 486 U.S. at 870, 108 S. Ct. at 2208 (Rehnquist, C.J., dissenting).[39]

The majority fails to anchor this case firmly in the existing § 455(a) jurisprudence. Imprecision and generalization without precise legal standards articulated and applied will reduce a supposedly objective standard to the subjective whim of the appellate panel. Although I sympathize with the majority's concerns, the facts of this case satisfy the objective test of *Liteky* and Fifth Circuit law: Judge Harmon did not abuse her discretion in denying the motion to recuse herself. Therefore, I respectfully dissent.[40]

---

[39] The majority also excuses itself from addressing prior caselaw because it is "uncomfortable in *blindly* relying upon civil cases in determining whether a judge presiding over a felony trial should recuse." The clear language of § 455(a), however, makes no distinction between civil and criminal cases. I believe civil litigants are equally as entitled to an impartial judge as are those involved in a criminal case.

[40] I have not addressed the remaining issue))the remedy for a § 455(a) violation. Even if I agreed that Judge Harmon abused her discretion, I see no reason why another judge of the Southern District of Texas could not conduct the resentencing. The majority's *Couch* remedy implies that disqualification of a single judge automatically disqualifies every other judge of that district. The

majority protests that "this is not the impression [they] want to leave the reader." Slip op. at 15 n.19. However, by stating that "having one of her own colleagues in her district pass on her past actions well might, in and of itself, exacerbate the appearance of impropriety," *id.* at 15-16 n.9, I cannot see how they avoid that impression. Moreover, our system often requires judges to rule on matters involving a colleague))if a judge may preside over the trial of the *murder* of a colleague without disqualification, *see United States v. Harrelson*, 753 F.2d 1153, 1164-66 (5th Cir.), *cert. denied*, 474 U.S. 908, 106 S. Ct. 277, 88 L. Ed. 2d 241 (1985), I see no reason to disqualify the entire Southern District of Texas in this case. For these reasons, I find the majority's remedy extreme.